IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-03336-MSK-KMT

MICHAEL GLENN WINBUSH,

    Applicant,

v.

WARDEN FAULK, Warden of Sterling Corr. Fac., and
JOHN W. SUTHERS, The Attorney General of the State of Colorado,

    Respondents.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

KATHLEEN M. TAFOYA, United States Magistrate Judge

This case comes before the court on Petitioner's Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Application") (ECF No. 1, filed December 10, 2011). Pursuant to the Amended Order of Reference dated April 6, 2012 (ECF No. 16), this court has reviewed the Application, Respondents' Answer ("Answer") (ECF No. 21, filed May 16, 2012), Petitioner's Response to Answer ("Reply") (ECF No. 22, filed June 11, 2012), the pertinent parts of the state court record, the case file, and the applicable law, and is sufficiently advised to recommend that Petitioner's Application be DISMISSED WITH PREJUDICE.

**I. BACKGROUND**

Petitioner was convicted by an El Paso County District Court jury in Case No. 06CR1878 of four counts of sexual assault. (ECF No. 1, at 2 of 25). He was sentenced to an indeterminate prison term of eight years to life. (*Id.*). The conviction was affirmed, in part, on direct appeal by the Colorado Court of Appeals in *People v. Winbush*, No.

08CA0656 (Colo. App. March 10, 2011)  (ECF No. 1, at 11-25 of 25)  The following relevant facts are stated in the Court of Appeals' decision:

> The victim testified that, on December 23, 2005, she went to a bar with a girlfriend and became intoxicated. Her girlfriend drove her to the girlfriend's house, where [Petitioner] was living in the basement. The girlfriend helped the victim walk to the bathroom. The victim vomited, and her girlfriend then helped her move into the living room. Soon thereafter, the victim "passed out."
>
> When the victim awoke, she was disoriented and nauseated. She was unsure whether she was on the couch or the floor, but she soon realized that her pants and underwear had been removed. She also noticed that a person who smelled of cigarettes was breathing in her face. She felt fingers being inserted into her vagina, and she wondered whether she was dreaming. She did not consent to the intrusion, but she was too intoxicated to resist. For this same reason, she did not resist when the perpetrator performed oral sex on her, or when he had intercourse with her. And, because she was intoxicated, she was unable to testify how long the assault lasted.
>
> The next morning, the victim was partially awake (with her eyes closed) when the man who smelled of cigarette smoke leaned close to her and asked if she was okay. As the victim became more oriented, she thought about the previous evening's events and realized that she had been sexually assaulted. Because [Petitioner] was the only smoker living in the house, the victim concluded that he was the perpetrator. The victim informed her girlfriend of this, and the girlfriend immediately confronted [Petitioner]. [Petitioner] denied having any sexual contact with the victim and stated that he had remained in the basement throughout the evening. However, when the girlfriend called the police, [Petitioner] left the house.
>
> The victim submitted to a rape examination, and [Petitioner's] semen was discovered inside her vagina.
>
> The only witness to the incident was the girlfriend's nine-year-old daughter. She testified that she came downstairs during the night and observed the victim lying on the floor. The victim's pants were pulled down, and [Petitioner] was "on her leg" and "below" her waist.
>
> [Petitioner's] defense theory was that he and the victim had engaged in consensual sex, and that the victim had fabricated the sexual

>assault allegation because she did not want her husband to learn that she had been unfaithful while he was away.

(*Id.* at 12-13). The state appellate court affirmed the judgment with regard to Petitioner's claims of evidentiary error (*id.* at 15-20), but concluded that the four sexual assault convictions must merge into one count. (*Id.* at 20-25). The Colorado Court of Appeals therefore vacated the sentence and remanded for resentencing. (*Id.* at 24-25). On remand, the state trial court merged the four convictions into one count and imposed the same eight-year indeterminate prison sentence. (Pre-Answer Response, Appendix A, ECF No. 10-1, at 9-10 of 25).

The Colorado Supreme Court denied Mr. Winbush's petition for certiorari review on July 25, 2011. (ECF No. 1, at 10 of 25).

Petitioner filed this federal habeas corpus Application on December 20, 2011, asserting that the trial court violated his due process right to a fair trial when the court admitted irrelevant and prejudicial testimony from the victim concerning (1) her husband's active military duty; and, (2) her husband's presence in the courtroom during trial to "support her." (ECF No. 1, at 5-6 of 25).

## II. LEGAL STANDARDS

### A. *Pro Se* Petitioner

Petitioner is proceeding *pro se.* The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir.2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by

3

lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). A court may not assume that Petitioner can prove facts that have not been alleged, or that Respondents have violated laws in ways that Petitioner has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir.1997) (court may not "supply additional factual allegations to round out a petitioner's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir.1991) (the court may not "construct arguments or theories for the petitioner in the absence of any discussion of those issues"). The Petitioner's pro se status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir.2002).

**B. Title 28 U.S.C. § 2254**

Pursuant to 28 U.S.C. § 2254(d), a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Petitioner bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the court must answer under § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404–05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir.2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407–08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409–10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

Claims asserting factual errors are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the court presumes

that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence.

## IV. ONE-YEAR LIMITATION PERIOD FOR FILING APPLICATION

Respondents do not challenge the timeliness of the Application under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1).

## V. EXHAUSTION OF CLAIMS IN STATE COURT

A writ of habeas corpus may not be granted unless the petitioner has exhausted his available state court remedies, with an exception for circumstances in which the existing remedies are not sufficient to protect the applicant's rights. 28 U.S.C. § 2254(b)(1). Exhaustion requires that "the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir.1994). Respondents state, and after review of the record and the claims made in this Application, the court agrees, that Petitioner has exhausted state court remedies for his claims of evidentiary error.

## VI. ANALYSIS ON THE MERITS

Petitioner claims that the trial court violated his due process right to a fair trial in admitting irrelevant and prejudicial testimony from the victim concerning (1) her husband's active military duty at the time of the offense; and, (2) her husband's presence in the courtroom during trial to "support her."

Federal courts do not have the authority to decide questions concerning the admissibility of evidence under state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991);

*Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001).  Due process challenges to state evidentiary rulings are reviewed only for fundamental unfairness.  *Hooker v. Mullin*, 293 F.3d 1232, 1238; *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir.1999).  A federal habeas court reviews state court evidentiary rulings "to determine whether the error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process."  *Hooker*, 293 F.3d at 1238 (citation omitted).  The fundamental fairness inquiry compels examination of the entire proceedings.  *See Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Further, "because a fundamental fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self restraint."  *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks omitted).

 If a constitutional error occurred at trial, the federal habeas court must determine whether the evidence had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

The Colorado Court of Appeals resolved Petitioner's claim on the following grounds:

> [Petitioner] first argues that the trial court abused its discretion, and thereby violated his due process right to a fair trial, by allowing the prosecution to elicit irrelevant and unfairly prejudicial testimony from the victim. We disagree.
> . . .
> Here, in direct examination, the victim testified that her husband was in the Army, and had been deployed to Iraq in November 2005. [Petitioner] does not challenge this testimony on appeal, and he concedes that it "may have been marginally relevant" to establish why the victim's husband was absent on the night in question.

. . .

Likewise, [Petitioner] voiced no objection when, in response to the prosecutor's question concerning the victim's husband's location on December 23, the victim repeated her earlier testimony that he was in "Iraq." However, [Petitioner] did object when the prosecutor asked the victim if on the night in question she had known "exactly where he was in the world." The court overruled the objection, and the victim replied that her husband "was in Kuwait getting ready to transfer to Iraq." [Petitioner] did not raise any further objection when the victim answered several more questions about her ability to communicate with her husband during his deployment.

In cross-examination, the victim agreed with defense counsel that, if she had been unfaithful to her husband while he deployed, he might have learned of the betrayal from her girlfriend's husband.

In redirect examination, the prosecutor sought to rebut defense counsel's insinuation by asking the victim whether she had been "having an affair" or "cheating on her husband" with [Petitioner]. The victim denied that she had, and she also denied that she was "selectively remembering certain things" to "cover up" what had really occurred. Although [Petitioner] did not object to this exchange, he did object, based on relevancy, when the prosecutor asked: "Your husband is here in support of you, correct?" The victim responded "yes," and the court overruled [Petitioner's] objection.

On appeal, [Petitioner] argues that, in combination, the prosecutor's questions "were a blatant attempt to evoke a poignant image . . . of the Iraq war, [and] the young soldier serving his country far from home at the holidays." According to [Petitioner], this was particularly prejudicial because the trial in this case was held in a jurisdiction (El Paso County) that has been "deeply affected by the war." We are not persuaded.

. . . . [W]e perceive no abuse of discretion in the court's ruling allowing the victim to provide more detail about her husband's deployment. This testimony — like the victim's initial testimony referring to her husband's deployment to "Iraq" — was materially relevant and not unfairly prejudicial.

However, we agree that the court erred by allowing the prosecutor to have the victim verify that her husband was present at the trial to "support" her. The fact that the victim's husband was attending the trial was clearly irrelevant, and the prosecutor's use of the term "support"

9

> impermissibly suggested that the victim's husband believed her account of what had happened.
>
> Nevertheless, this was an isolated error, and we have no reason to believe that it interfered with the jurors' ability to assess the victim's credibility because they knew that her husband did not have any independent knowledge of the incident. In other words, if the jurors had decided that the victim was not credible, they could have rejected her testimony and, to the extent they considered her husband's presence at the trial and equated it with an endorsement of her veracity, simply concluded that she had misled him. Accordingly, we conclude the error was harmless. See Crim. P. 52(a) (under a harmless error standard, reversal is not required unless the error affects the defendant's substantial rights).

(ECF No. 1, at 15-20 of 25).

### A. Victim's Testimony about Husband's Military Duty

Petitioner first contends that the trial court deprived him of a fair trial when the court permitted the prosecutor to elicit testimony from the victim establishing that her husband was on active duty in the army and that he had been deployed to Iraq in November 2005.  (*See* State Court R. 8/22/07 Trial Tr., at 10).  Petitioner further objects to the prosecutor's follow-up question to the victim about her husband's exact location at the time of the sexual assault, to which the victim responded, "in Kuwait getting ready to transfer to Iraq."  (*Id.* at 15-16).  The state appellate court concluded correctly that the testimony was relevant to the husband's absence on the night of the sexual assault.  Indeed, defense counsel made reference to the husband's deployment to Iraq in his opening statement.  (*Id.* at 7).  Petitioner has not demonstrated that the admission of the evidence was unduly prejudicial, much less that it so infected the trial as to result in a deprivation of due process.  Accordingly, the Court finds that the state appellate court's decision was not contrary to, or an unreasonable application of, federal law.

**B.  Victim's Testimony about Her Husband's Support**

Petitioner next objects to the victim's testimony on redirect examination that her husband was present in the courtroom to "support her."  (State Court R. 8/22/07 Trial Tr., at 84).  The state appellate court found that the admission of this testimony was error under state law, but that the error was harmless.  Accordingly, the court must determine whether the challenged testimony had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638.

The victim's husband was out-of-the country at the time of the sexual assault and, therefore, his knowledge of the incident was based solely on what the victim told him.  The victim's testimony may have indicated to the jurors that the husband was present at trial because he believed the victim's version of events.  However, as the state appellate court observed, if the jurors found the victim not credible, they would have simply concluded that the victim deceived her husband.  Because the husband had no independent knowledge of what happened on the night of the sexual assault, his presence in the courtroom could not have persuaded the jurors of Petitioner's guilt.  Moreover, the prosecutor did not ask more than one question about the husband's support of the victim and did not emphasize the point during closing argument.  (*See generally* State Court R. 8/22/07 Trial Tr., at 84-90; 8/24/07 Trial Tr., at 125-33).  An isolated comment or statement during trial mitigates against a finding of harm.  *See e.g. Bland v. Sirmons*, 459 F.3d 999, 1023 (10th Cir. 2006); *United States v. Lauder*, 409 F.3d 1254, 1261-62 (10th Cir. 2005).  Accordingly, the court finds that the Colorado

Court of Appeals' resolution of Petitioner's claim did not have a substantial and injurious effect on the jury's verdict. *See Brecht.*

Finally, Petitioner also suggests that the victim's testimony that her husband was there to "support her" violated his Sixth Amendment confrontation rights because the husband did not testify and was not subject to cross-examination. Petitioner did not exhaust state remedies for this claim. *See* 28 U.S.C. 2254(b)(1) (requiring state prisoners to exhaust available state remedies before seeking federal habeas corpus relief). However, it is easily dismissed on the merits. *See* 28 U.S.C. § 2254(b)(2) (stating that habeas petition may be denied on the merits, notwithstanding the petitioner's failure to exhaust state remedies); *Moore v. Schoeman*, 288 F.3d 1231, 1232 (10th Cir. 2002).

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[1] In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that a trial court's admission of testimonial hearsay against a defendant at trial violates the defendant's confrontation rights unless the witness is unavailable and there was a prior opportunity for cross-examination. The Confrontation Clause applies only to testimonial hearsay. *See Davis v. Washington*, 547 U.S. 813, 823-826 (2006). In so holding, the *Davis* Court referred to its earlier statement in *Crawford*:

> The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' 1 N. Webster, An American Dictionary of *824 the English Language (1828). 'Testimony,' in turn, is typically 'a solemn

---

[1] U.S. Const. amend. VI.

> declaration or affirmation made for the purpose of establishing or proving some fact.' *Ibid.* An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.

*Id.* at 823-34 (quoting *Crawford*, 541 U.S. at 51). The Tenth Circuit has defined a testimonial statement as "a statement that a reasonable person in the position of the declarant would objectively foresee might be used in the investigation or prosecution of a crime." *United States v. Pablo*, 625 F.3d 1285, 1291 (10th Cir. 2010).

As discussed above, the victim's husband had no independent knowledge of the offense with which Petitioner was charged. As such, any statement he made to the victim or to anyone else indicating his belief or disbelief in the victim's version of events could not have been used to establish any fact relating to the crime and was not "testimonial" within the meaning of *Crawford.*

WHEREFORE, for the foregoing reasons, this court respectfully

**RECOMMENDS** that the habeas corpus application be DENIED and the action be DISMISSED WITH PREJUDICE.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir.1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for de novo review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely

and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir.1996). Failure to make timely objections may bar de novo review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir.1999) (District Court's decision to review a Magistrate Judge's recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir.1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir.1992) (by their failure to file objections, Petitioners waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 19th day of July, 2012.

BY THE COURT:

_____
Kathleen M Tafoya
United States Magistrate Judge